Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Thank you. Good morning to all. I'm pleased to be sitting this week with my colleagues Judge Britt Grant and Judge Gerald Joe Flatt. My only regret is that we are not doing this in person and that we are still doing this by Zoom, but I remain extraordinarily hopeful that we are going to be returning to normal very, very soon. Mr Brian Robinson is our courtroom deputy and timekeeper. And just for those of you who have not been before us during our zoom away sessions, we operate on a traffic light system. Your time remaining will first appear in green and when you get down to two minutes, it will appear in yellow. It will turn red when you've reached the end of your allotted time. And if you would just wrap up what you're saying in a sentence or two. We have four cases on our oral argument calendar today, and I am now going to call the first case United States of America versus Trini Thomas, Jr. We have Jerry Brandt for the appellant and Sarah Sweeney for the good morning. Your honors Sweeney Jeff Brandt on behalf of defendant appellant Trini Thomas. The district court procedurally aired in this case by incorrectly calculating the guideline range in two ways. Excuse me. Uh, and then procedurally airing by starting the sentencing process with that incorrect and inappropriately high guideline. As a summary for you, those two errors are number one that the district court, um, found that the government had proved by a preponderance of the evidence that Trini Thomas had maintained the register road stashed residents as a stash house. And then second, by mistakenly believing as a matter of law that the fact that Mr Thomas had received a enhancement for gun possession that he was therefore ineligible for the safety about, um, I'm happy to answer any questions of any of the arguments. But we do see from the government's brief that showing prejudice as to the stash house argument may come down to whether the court agrees to hear and how it rules on, uh, the argument about safety about. So I would begin their subject to the court's question. Mr Brandt. Actually, let me ask you. Can I ask you for clarification on the premises enhancement question? Um, having looked at the record, I just want to clarify one point. Do you agree that it is undisputed that Thomas lived at the register roads stash house for at least some portion of the drug conspiracy? I know you emphasized at sentencing that the house didn't belong to Thomas, and he only lived there for a small part of the conspiracy. But are we all on the same page that the government demonstrated that Thomas lived at the stash house for at least some part of the conspiracy? Absolutely, Your Honor. We're not making an argument that he did not live there. That's a strong man that the government creates. Our argument, which can be found that on our brief at 19. Um, is that the government argues that it's brief of page 18 that Thomas abandoned this argument that he didn't live at the house. But he's not making that argument or make an argument that the government failed to prove that either by living there at a time where there are drugs being stored there and being taken out of there that there's a nexus or that after he moves out that somehow there's a connection after he moves out. The drugs are being stored there. And if we go through the factual basis, most but not all of which Mr Thomas stipulated to at his plea hearing, it shows that there simply is not that nexus, even for the time period that the government states that he lived there. And that is, they say, from late April to late June. And I'm happy to go through that factual basis and each of the events that that factual basis describes and show how nothing is showing that Mr Thomas is controlling or directing anything and nothing showing that drugs are coming out of the Register Road house. Because remember, the district court found that it could the stash house was not the shed. And so no basis for this enhancement could be the fact that Mr. Thomas had keys to the shed. I want to make sure I understand your argument. Are you saying that the the residence was could not qualify as a stash house or that your client did not have the necessary connection to the residence or both? That that my client did not have, it does not meet the requirements under this court's case law and the enhancement of the guidelines to show that he maintained that house as a stash house. That house may have been used as a stash house at some time. We're not saying it never was, it never could have been. We're saying that the government seems to have built its case on showing that the the shed, the black shed in the backyard was the stash house. But the district court found that it wasn't, that it had to be the house. But the government's own factual basis shows that the drugs are being pulled from that stash house. I mean, from the shed, not from the residence. I guess that's why that's why I was wondering if you're trying to say that the residence itself didn't qualify as a stash house. I don't think we have the basis to say it was or it wasn't. Our argument is that regardless of whether the house was, the government failed to prove that Mr. Thomas controlled or maintained that house at a time where there were drugs being stored there. So you concede he lived there, but the evidence you're saying that the record does not show that during the time he lived there and, you know, had a key to the house, that there that it wasn't functioning as a stash house. Both that when he lived there, there's no evidence that it was functioning as that house and that after he moved out, that there was any, you know, no dates where he's showing up at the house getting any drugs out of the house. I mean, the Mr. Brett. Yes, your honor. Wasn't there evidence that he evidence that he disposed or dispensed drugs from the house? No, your honor. He was never at the house where the transaction was ongoing. There was the government makes a citation to one occasion on June 23rd, 2018. This is the And on that date, Mr. Woods and co-defendant Harrison agreed to meet at the address. And the government says this is proof that Thomas controlled or directed things because he showed up. The government's own was Thomas was Thomas president at the at the residence. It says at any time at any time during the transaction. Yes, but he's in front of the house and the government's own evidence shows that Harrison shows up and goes to the shed and gets drugs out of the shed, not out of the house. And this is the government's argument for the basis for excuse me, saying that Thomas controlled the situation when it's Harris talking to Woods Harrison talking to Woods Harrison making the action directing Mr. Thomas apparently to appear because Mr. Thomas appears, but no drug transaction takes place at that time. And then Mr. Harrison appears, goes to the shed, gets drugs and gives them to Mr. Woods, which are later found, even though they weren't found on him. He later makes a phone call and they find that he must have discarded them out of his car before the traffic stop. Mr. Brandt, I want to make sure we get to the safety valve piece to. Yes, Your Honor. This is not this court's example or doesn't fit this court's case law for an invitation of an error. The government cites the Brandon case and the guilt case. The Brandon case, the information filed against the defendant had a material error in that element was missing. The defense attorney didn't miss that, didn't make a mistake in not noticing that the district court didn't make a mistake in not noticing it. To the contrary, defense counsel noticed the error. The court noticed the air and they talked about it. That is invitation of error because multiple times the defense attorney was asked, Do you want to do anything about this? Do you want to move to dismiss? Do you want to not have trial today? And everybody in open court recognizing that there's a problem, the defense attorney makes a strategic decision and says, No, we're going to go with it. We're going to go to trial. That is very different from what we have here. This is this is not a case of the attorney realizing as a matter of law, his client, Mr. Thomas, actually can get the safety valve. Instead, nobody notices the air. That's not invited air. Now, the guilt case doesn't apply at all because there's not even an error in the guilt case. The guilt case is an outlier for even using the doctrine of invited air because there is no air at all. Council, let's assume that there is no invited air. Do you agree it was your burden to prove eligibility for safety valve relief by preponderance of the evidence? And if so, can you tell me how you did so? It is our burden and my the council representing Mr Thomas did not make that effort because he was operating under a misconception. We would ask the court to find that the district court. This was not invited air that the district court air and remand to the district court for a hearing on whether Mr Thomas can meet that burden. And we would ask the court that it would give direction to the district court on the stash house question following and resentencing after that hearing. Then I see my time. Thank you, Mr Brandt. Thank you, Miss Sweeney. Good morning, Your Honor's Council. May it please the court Sarah Sweeney on Mr Thomas is sentencing. Council here told the district court that it's ruling on whether the 2 d 1.1 firearm enhancement applied would have a quote unquote ripple effect and would determine whether Mr Thomas was eligible for safety valve. Mr Thomas thus invited the legal error that the district court made, and that error set the stage for what came later, which is that once the district court determined, um, that the firearm enhancement in 2 d 1.1 applied, Mr Thomas made no further effort to show that he was otherwise entitled to safety valve relief. He simply threw in the towel on that issue. At that point in time, the record thus lacks evidence that he is entitled to safety valve relief that lacks evidence to meet his burden that he didn't constructively possess the firearms in Register Road stash house. But unfortunately, that's a that's a problem of his own making, and he's not entitled to relief from that problem. If this court agrees and decides that he's not eligible for safety valve relief, it doesn't need to reach the premises issue because at that point he would have been sentenced to the mandatorily required minimum sentence. Uh, yes, Miss Miss Sweeney. Um, in our circuit, the invited error doctrine is not triggered by ambiguous statements. How is this not a case where, um, the defense counsel was saying, you know, I think, um, that the statements were far from clear. How is this gonna be invited error? If these seem to be ambiguous statements, Your Honor, I don't agree that they're ambiguous. I statements. Um, sometimes he would say or he did say, as I understand it, he did say, I think I'm sorry. He said, I'm pretty sure that it leads to that. But he was obviously telling the district court that that was the law. I mean, he also threw in as an officer of the court. I'm pretty sure the ruling you just made, according to one of the paragraphs of the safety valve provision, would preclude him from following from qualifying. He also told the court, as I understand it, uh, your decision on the firearm enhancement would not only increases base offense level by two, it would preclude the defense's further requests that we're going to make. And then he agreed with the district court when the district court said that further request was for safety valve relief. Although he says, you know, these these kind of phrases, such as I understand it, they're not, um, they're not equivocal. He's telling the court that he believes the law requires that the district court act in a certain way. Um, so he thus induces the district court to act in that way that that's the United States position. So and then even if this court finds that it was not an invited error, we then get to the point where the question is, did Mr thomas meet his burden to show that he was otherwise qualified for safety valve relief? And the United States doesn't believe he met that burden either. So he loses on that ground as well. Um, which is that here, uh, the district court found that he had, um, residents at an access to the register road stash house. It found that there were 14 guns that were spread around that residence, um, spread throughout it and that Mr thomas, um, distributed drugs regularly in close proximity to the house itself. Um, and and I guess from there, if there's those questions specifically about that, that's a good transition point to talk a little bit about the premises enhancement as well. And some of the, uh, the questions that your honors were asking about what the transition on the safety valve issue. If we determine that this was not invited error, but we know that the district court aired, um, why wouldn't we remand this issue to the district court to consider whether Mr thomas is entitled to safety valve relief in the first instance? That is one path that this court could decide to take. But the record is developed here that he can't meet his burden. The district court, for instance, found that he actually knew that Mr thomas actually knew there were guns in the residence. Um, Mr thomas regularly distributed drugs, um, at the premises of the register road stash house, usually in the yard. And that's something we'll talk about, um, further in a moment. Um, but then also found that this court has also found that there is, um, the ability for guns in that close proximity to drug trafficking activity, that they have a clear ability, um, to potentially be used to further drug trafficking activity. And that's the career case that I think both parties have cited here. Um, and so as a result of that, everything's in the record that's needed to show that he didn't meet his burden. Um, and you're saying the record shows he didn't meet the burden, but he's saying the court made an error. I'm entitled to put forth evidence to meet the burden. Shouldn't we remand your honor? I think the problem here is Mr thomas didn't even try to meet his burden. He he folded on this issue right out of the gate. Um, and that again shows that his counsel did invite the error. But even setting that aside, he made no effort to do that. He presented nothing to the district court in that regard. And as I said, I think one possible solution is a remand. But I think another one is saying he simply has failed to meet his burden here because he did not try to meet that burden below at all on the premises enhancement. Um, and I'm happy to answer any other questions about the safety valve relief as well. But on the premises enhancement to address um some of the questions um that your honors were asking of my colleague. Um there there is no. So and this was part of the correction that we filed there. There is no evidence below that drugs were distributed directly out of the house. And I think one of the issues here is some of the um impreciseness in the record below about what people were referring to when they were talking about the residents or the premises um drug trafficking drug dealing regularly by Mr thomas regularly took place in the fenced in yard um of the register road stash house. And then he lived there for a period of time. So at the very least um the the stash house was maintained for the purpose of allowing Mr thomas to deal drugs in the yard of the stash is that in those cases did the drugs come from the shed that the district court specifically said it wasn't relying on for purposes of the stash house or did the drugs come from the residents? Your honor, I can't point you to a time where the drugs came out of the residents. Sometimes it's unclear where they came from. The United States of sentencing showed a series of pictures um from dates in june and july where it appears that Mr thomas gets the drugs out of the the shed or the it's a the shed is actually a black trailer that's sitting on the property. Um the district what the district court found about the trailer was that there he could not find that the primary or principal purpose of the trailer was the distribution of drugs as opposed to a collateral um or kind of incidental use of the trailer. But regardless he found that the register road stash house, the premises there was used for the primary for a primary or principal purpose of distributing drugs. But no, I can't point you to a specific time where drugs came out of the house. Um but the like as I was saying at the very least um the the stash house is maintained for the purpose of allowing people like Mr thomas to distribute drugs in the yard. He lived there. Um he admitted to in the PSR and at his change of plea to regularly distributing drugs from that residence. Um and so for those reasons the district court didn't clearly air and finding that that enhancement applied. Um I also know uh judge grant wanted to just respond for a moment to some of your questions about was this stash house um and and what showed that it was and I think the the issue for Mr thomas in that regard is that both the factual basis that you know kind of um uh was presented at his guilty plea and the PSR they both regularly refer to the to the register road premises as a stash house. Um and under this court's precedent those and there was no objection to that and there was no stash house. Um and those kinds of statements um in a PSR um and this is the the beckles case that is cited in the government's brief um in beckles. This court held that those kinds of statements in a PSR if they're unobjected to the district court is free to rely on them and that's true even if there's no evidence in the record that that that statement otherwise was true. But I would also point here, I do think there is additional evidence in the record that shows besides just the drugs that shows that it is a stash house and that's the presence of the 14 firearms that are in the house and you this is um near in direct and close proximity to a location where um a lot of drugs are being distributed in a very short period of time. This conspiracy went from um May of 2018 uh till till july of 2018 um early may to early july. And in that period in that period Mr thomas alone was responsible for distributing 1.5 kilograms of actual meth and 100 grams of heroin. Um So this is this is a large amount of drugs in a short period of time and he admits to regularly distributing near that house where 14 guns are. Um So for those reasons the United States doesn't um think that the district court clearly aired and applying the premises enhancement and many of those same facts also show that Mr thomas can't meet his burden to show that he's entitled to safety valve relief. If there are no other questions, I'll I'll yield the rest of my time. Thank you. Your honors very much for your time this morning. Thank you. Miss Sweeney. Mr. Brandt, you have reserved five minutes for rebuttal. Yeah. Sorry about that. It took me a second to get the unmute button on. Uh my colleague says uh sometimes it's unclear where the drugs came from. And I think uh that's a major part of our argument that remember that the register road address is one of the addresses. Nobody's saying Mr thomas was not a drug dealer. He admitted such he pleaded guilty to such but he the government failed to prove a connection between this what the district court found to be the sash house, the residents and Mr thomas 14 firearms were found at the house. But that's well after Mr thomas had moved out well after the dates that established his factual basis. Uh if the government, I particular that what the government types in its brief as the june 23rd 2018 event and and reviews what what's happened, that's the government's best case. And in that best case uh there's no evidence that Mr thomas directed anything that controlled anything or that any drugs came out of the the what I'm hearing the government argue that quote I'm pretty sure and quote as I understand it with respect that seems like the definition of ambiguity. That's that is not what a statement of what the law is in encouraging a district court judge to agree. That is not your honor. This is the law and this is what has to happen. Uh as I understand it is probably a phrase I use when I'm not so sure and or I don't want to uh mistake the law and we'd submit that is ambiguous. That is not what follows in the wake of this. This is not the factual scenario that follows in the wake of this court's case law when it comes to invitation of error and would uh be bad precedent to say that that's the invitation of error. It's going to encourage more 22 55 because this court can't use the judicial economy and resolve these issues um here on appeal like the land versus United States case that we cite in our brief um the procedural default rule means we should address these when possible now here on direct appeal not forcing additional litigation. The appropriate response is not to shut Mr thomas down now on appeal but to remand before there's a need to make any type of claim against uh sentencing counsel. Uh the better way to resolve it is to find this was not invitation of error that the district court erred and we need to have a hearing on um uh the safety valve application and uh we hope that the court addresses the maintaining sex dash house argument now so that the district court has that direction on the remand and I would see my time if there's no questions. Thank you Mr Brandt. Uh thank you both. We have your case under submission and I'm now going to call the next case.